966 So.2d 25 (2007)
Robin L. TUCKER, Appellant,
v.
James T. TUCKER, Appellee.
No. 2D06-857.
District Court of Appeal of Florida, Second District.
August 15, 2007.
*26 Allison M. Perry of Law Office of Allison M. Perry, P.A., Tampa, for Appellant.
James T. Tucker, pro se.
SALCINES, Judge.
Robin L. Tucker, the Former Wife, appeals the second amended final judgment of dissolution of marriage ("the final judgment"). We reverse the equitable distribution of marital assets as discussed below but otherwise affirm the final judgment without further discussion.
The entire equitable distribution plan must be reversed due to the manner in which two assets of substantial value were treated. The first asset that dramatically impacted the equitable distribution plan is a townhouse located in Treasure Island, Florida. In the division of assets in the final judgment, the townhouse was distributed to the Former Wife. At the dissolution trial, James T. Tucker, the Former Husband, unsuccessfully attempted to introduce evidence of the value of the townhouse through the testimony of a realtor. The trial court sustained the Former Wife's objection to the realtor's testimony because he did not qualify as an expert and he was not permitted to testify. The only testimony about the value of the townhouse presented by the Former Husband was when he was asked if he valued the townhouse at $912,000 in his financial affidavit. He responded, "Yes." No other testimony was given by the Former Husband concerning the valuation. He did not state how he calculated this figure, whether this sum represented the net equity value of the property, or whether the outstanding $295,000 mortgage on the property was included in this amount. The Former Wife presented no testimony about the current value of the townhouse. Her financial affidavit opined that the value of the townhouse was $595,000. When it set forth the division of marital assets in the final judgment, the trial court assigned a value of $912,000 to the townhouse.
The trial court's valuation of marital assets must be supported by competent, substantial evidence. § 61.075(3), Fla. Stat. (2005). An owner of property is generally qualified to testify about the value of his own property. See Beaty v. Gribble, 652 So.2d 1156, 1158 (Fla. 2d DCA 1995). However, based on the unique facts in the present case, the record does not contain competent, substantial evidence to support the value the trial court assigned to the townhouse as discussed above. The trial court's finding regarding the value of this real property is reversed. On remand the trial court shall conduct an evidentiary hearing, and the parties shall be given the opportunity to present testimony and evidence concerning the value of the townhouse on the date of valuation established by the trial court.
When determining the value of marital assets, the trial court has discretion to establish the date of valuation. In the present case, the parties did not enter into a separation agreement; therefore, the date of the filing of the petition for dissolution of marriage (April 11, 2001) would generally be used. However, the trial court in its discretion may use the "date or dates as the judge determines is just and equitable under the circumstances." § 61.075(6). The final judgment states that the assets and liabilities were valued as of the date of the final hearing, December 15, 2005. The trial court indicated *27 that this date was selected because the parties had attempted reconciliation and the Former Husband had purchased the townhouse and a 2004 BMW subsequent to the filing of the petition. There is no evidence that the trial court abused its discretion when it selected this date for the valuation of the townhouse.
The second asset that skews the equitable distribution plan is the previously referenced 2004 BMW. Use of the selected valuation date in relation to the vehicle, identified in the final judgment as an asset of the Former Wife, resulted in an abuse of discretion by the trial court. The Former Wife correctly asserts that including the vehicle valued at $23,500 in the equitable distribution scheme was improper because on December 15, 2005, the vehicle was no longer in her possession. The Former Wife testified that she was forced to sell the vehicle approximately two weeks prior to trial for $23,500 because the Former Husband had not been making child support or alimony payments and she had no other source of income.
The Former Wife cites to Plichta v. Plichta, 899 So.2d 1283 (Fla. 2d DCA 2005), in support of her argument that marital assets depleted during dissolution proceedings may not be included in the equitable distribution scheme of a final judgment unless marital waste is proven. In Plichta, this court reversed the trial court's award of two IRA accounts to the husband because he had liquidated these accounts during the pendency of the dissolution proceedings. This court concluded that these depleted marital assets should not have been included in the equitable distribution scheme because the husband had used these marital assets to pay for his support, living expenses, some litigation costs, and no misconduct was asserted. Plichta, 899 So.2d at 1286.
In the present case the Former Wife testified that she had no way to pay her bills, and "they started cutting off the credit cards [she had] been living on." She used the money to pay bills, to rent a car, and "the rest" was placed in a bank account. The parties stipulated at trial that as of December 15, 2005, the Former Husband owed $39,117.46 in child support and alimony arrearages. There was no evidence that the Former Wife wrongfully depleted marital assets when she sold the vehicle. The trial court abused its discretion when it included the value of this depleted asset in those assets awarded to the Former Wife. See Segall v. Segall, 708 So.2d 983, 986 (Fla. 4th DCA 1998); Cooper v. Cooper, 639 So.2d 153, 155 (Fla. 2d DCA 1994).
Accordingly, we reverse the portion of the final judgment distributing the marital assets of the parties. On remand the trial court shall reconsider the equitable distribution plan and shall conduct an evidentiary hearing to determine the value of the Treasure Island townhouse. If the trial court again concludes that December 15, 2005, is the proper date of valuation for the 2004 BMW, it shall not include the vehicle in the assets of the Former Wife. Further, upon completion of the new distribution plan, if the trial court determines that the redistribution of assets results in an inequity to either party, it may revisit the alimony issue. In all other respects, the second amended final judgment is affirmed.
Affirmed in part, reversed in part, and remanded with directions.
THREADGILL, EDWARD F., Senior Judge, Concurs.
ALTENBERND, J., Concurs with opinion.
*28 ALTENBERND, Judge, Concurring.
I concur with the majority's decision to reverse the equitable distribution in this case and to remand for further proceedings. I would emphasize, however, that this case should not be interpreted to hold that an owner does not generally have the ability to provide competent, substantial evidence about the value of real property, or that some expert valuation is always required when two co-owners disagree on the value of real property. There are several factors that make this case unique. Further, if the value of the townhouse, which is undoubtedly the most valuable asset of this marriage, is significantly inflated, an equal distribution will prove an undue hardship for the wife and the couple's child. For these reasons, I agree that further proceedings are required regarding the equitable distribution of marital assets.
The parties were married in 1980 and had three children. Two of the children are now adults, but the youngest is now twelve years old and has some significant health issues. The wife was a homemaker throughout the marriage and provided the primary care for the children. The husband was self-employed as an air conditioning contractor. Based upon the evidence presented at the final hearing, the court concluded that his annual income was $150,000. During the pendency of these proceedings, the husband engaged in conduct that suggested he might be disposing of or hiding income or assets.[1]
The wife filed the petition for dissolution of marriage in 2001. At that time, the only real property the parties owned was the marital home. In 2003, however, the parties purchased the townhouse in Treasure Island and at some point, the wife and minor child moved into this townhouse. The purchase price for the townhouse was $495,000. Both parties agreed that the townhouse had increased in value by the time of the final hearing in December 2005, but the parties' respective values were drastically different. The wife filed a financial affidavit indicating the value of the townhouse was $595,000, while the husband's financial affidavit listed the value at $912,000. Both parties agreed that the husband should be awarded the marital home and that the wife should be awarded the townhouse. At some point during the trial, the wife indicated that she was no longer residing in the townhouse and wanted to sell it, but she ultimately objected to the court requiring a sale because neither party had sought a partition of the property. The valuation of the townhouse became a central dispute.
This was not a case, however, in which each party filed a financial affidavit listing their opinion of the value of the real property and provided no further evidence, leaving the trial judge to choose between two equally unsubstantiated values. If it were, we might be compelled to affirm the trial court's choice of one co-owner's unsupported opinion of value over the other co-owner's equally unsupported opinion.
In this case, the value of the townhouse listed on the husband's financial affidavit was not based upon his own opinion of value, but was in fact based upon an opinion provided to him by a realtor who had performed a simple and cursory market analysis of the property, sight unseen. At trial, the husband sought to introduce the *29 testimony of the realtor and the realtor's opinion that the value of the townhouse was $912,000. The wife objected to the realtor's testimony and performed a voir dire of the realtor's qualifications and basis of knowledge. Thereafter, the trial court ruled that the realtor was not qualified to provide an opinion on the fair market value of the townhouse.
Faced with this scenario, the husband's trial counsel suggested that although the husband's financial affidavit listed the value of the home at $912,000, the husband would be willing to permit the wife to sell the townhouse and to accept as the value the actual sale price thus obtained. The wife, however, objected to the court ordering a sale in the absence of a request for partition.
At the conclusion of the trial, the judge took the matter under advisement. Approximately two weeks later, the court issued the final judgment of dissolution of marriage. The judgment awarded the wife the primary residential responsibility for the minor child and required the husband to pay the wife $884 per month in child support and $4667 per month in permanent periodic alimony. The judgment found the husband was in arrears of temporary support obligations in the amount of $39,117.
As for the equitable distribution of marital assets, the judgment found the value of the townhouse was $912,000, even though that value was based upon the opinion of the realtor who had been held unqualified to testify to that opinion. Given that the parties agreed that the townhouse would be awarded to the wife and the marital home would be awarded to the husband, and given that the value placed on the townhouse was almost twice that of the marital home, the court then awarded the remaining marital assets to the husband, with the exception of the wife's car, jewelry, and the furnishings in the townhouse. This resulted in the wife obtaining marital assets (including the townhouse) with a net value of $663,000 and the husband obtaining marital assets with a net value of $443,984. Finding that an equal distribution was appropriate, the trial court ordered the wife to make an equalizing payment to the husband. This payment of $109,508 was reduced by the $39,117 the husband owed in temporary support obligations. The wife was ordered to pay the husband $70,391 within ninety days of the entry of the final judgment or upon the sale of the townhouse, whichever first occurred.
As the majority acknowledges, an owner of real property is ordinarily qualified to testify to the value of his or her own property. See, e.g., Beaty v. Gribble, 652 So.2d 1156, 1158 (Fla. 2d DCA 1995) (citing Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. 2d DCA 1961)). Indeed, many dissolution of marriage actions resolve disputes regarding the value of marital assets solely based upon the testimony of the parties, without the assistance of expert opinions on the fair market value of assets. When the parties fail to present evidence other than their personal opinions as to value, a trial judge ordinarily must choose between those values.
In this case, however, the husband did not simply offer his opinion of the value of the property as an owner. He explicitly relied upon a valuation provided by a realtor who was held incompetent to testify as to value. In fact, the husband thereafter recognized that the value was unsupported and sought to agree to a value based upon a future sale. Unfortunately, the wife, although purportedly intending to sell the property, would not agree to this resolution. Under these unique circumstances, the trial court did not have competent, substantial evidence to support a *30 finding that the townhouse had a fair market value of $912,000. I therefore agree in reversing the equitable distribution in this regard.
Further, I agree that an evidentiary hearing on the value of the townhouse is required on remand. The exclusion of the husband's expert during trial unexpectedly left the husband without competent evidence as to value. The wife presented no expert valuation, but relied only on a value from a line item in her financial affidavit.[2] Both parties should be permitted on remand to fully address a proper valuation.
In addition, I would note that once the trial court determines the appropriate value of the townhouse and the wife's vehicle, the court should reconsider the method of achieving an equitable distribution. I recognize that the parties agreed the townhouse was to be awarded to the wife. If the value of the townhouse is as high as suggested by the husband, an equal distribution may very well require a significant equalizing payment by the wife. However, requiring the unemployed wife to pay a lump sum of $70,000 within ninety days of a judgment that awards her child support and alimony to meet the daily needs of the wife and child certainly gives me pause.
NOTES
[1] By way of example, there was evidence that the husband had transferred over $200,000 in cash from a box buried in his backyard to a friend for safekeeping. Thereafter, the money disappeared and the friend signed a promissory note in favor of the husband in the amount of $150,000. Further, during these proceedings the husband was held in civil contempt and incarcerated for quite some time until he finally paid an $8000 purge.
[2] The lack of additional evidence on the value of the townhouse might have been the result of events occurring immediately prior to the final hearing. The transcript reveals that the parties thought they had reached a partial agreement regarding certain issues, but the anticipated agreement fell apart as the attorneys sought to explain its terms to the court. This may explain why the wife was unprepared to offer additional testimony on the value of the townhouse.