NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

KENNETH ALAN PEARSON,  )
                       )
    Appellant,  )
                       )
v.                     )    Case No. 2D17-4012
                       )
SHAY RAE PEARSON,      )
                       )
    Appellee.   )
_____)

Opinion filed March 22, 2019.

Appeal from the Circuit Court for Lee
County; Elisabeth Adams, Judge.

Matthew P. Irwin and Terrence M. DeSalvo
of the Men's Rights Law Firm, Cape Coral,
for Appellant.

Joseph P. Hoffman, Fort Myers, for
Appellee.


LaROSE, Chief Judge.


       Kenneth Alan Pearson and Shay Rae Pearson divorced. Former

Husband now challenges the final judgment of dissolution of marriage and child support

order. We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). The record before us

stymies our ability to assess adequately whether the trial court properly equitably

distributed monies from a law firm's trust account and proceeds from the sale of a parcel

of real estate. The record does demonstrate that the trial court should have classified

some portion of Former Wife's Florida Retirement System (FRS) pension as a marital asset. Consequently, we reverse the trial court's equitable distribution and remand for further proceedings. We also remand for the trial court to correct a minor numerical error in the Equitable Distribution Worksheet (the Worksheet). We affirm in all other respects.

## Background

The parties married in August 1998. They separated some fifteen years later. Former Wife filed the operative petition for dissolution of marriage in 2013. During the proceedings, the parties sold some real estate. They deposited some of the sale proceeds in Former Wife's bank account; the rest went into the trust account of Former Husband's lawyer. After Former Husband successfully evicted tenants from other marital property in 2014, he deposited the last $1500 rental payment in the court registry.

In March 2015, the trial court ordered Former Husband's lawyer to distribute $4000 from his trust account to Former Wife's lawyer and $4000 to himself to partially satisfy an outstanding lien judgment. Former Wife agreed to keep $4001.93 in her bank account from the sale of the previously described parcel of property. The parties also stipulated that $6994.39 remained in the trust account of Former Husband's lawyer, representing the net proceeds of the sale of the marital home and the proceeds from the eviction case. The parties agreed that Former Husband's lawyer would distribute the remaining trust account funds as follows: $5498.16 to himself for fees, $496.23 to Former Wife's lawyer, and $1000 to Former Wife. The trial court agreed to this disbursement.

The trial testimony concerning the trust account funds and Former Wife's pension was sparse. Former Wife testified that about $13,000 of the trust account funds came from the sale of the marital home and $1500 of the funds came from the eviction case. Although she testified that the parties' counsel handled the disbursement of the trust account funds, she did not understand what happened to the funds.

Former Husband testified that he used an unspecified portion of the proceeds from the sale of the marital home for legal fees. He believed the $1500 from the eviction case remained in the court registry, not the trust account. As to the proceeds from the sale of the parcel of real estate, the parties seemingly agree that those funds went to pay legal fees.

As to the pension, Former Wife testified that she began to contribute to her retirement fund when she became a teacher in 2011. She was placed on administrative leave in late August 2013, and released from her job about a month later. She received pay while on administrative leave but was then unemployed until November 2013. Neither party suggested how Former Wife's administrative leave or termination affected her pension.

After the trial, the trial court entered a final judgment, attaching the Worksheet. The trial court identified Former Wife's pension as a nonmarital asset, commenting that the Former Wife became employed after she filed her petition. The trial court also identified, valued, and distributed the marital assets listed in the Worksheet. In row #19, the trial court identified $18,996 as proceeds from the sale of real property, distributing $13,498 to Former Husband and $5498 to Former Wife. In row #20, the trial court identified $1500 as funds from the "Landlord/Tenant Case,"

distributing $1500 to Former Husband.  The trial court made no additional findings regarding the trust account funds or pension.

<u>Analysis</u>

**I.      Equitable Distribution of Funds from Trust Account and Former Wife's Bank Account**

Former Husband argues that the trial court erred in including the trust account funds in its equitable distribution because he used the disbursements to pay his lawyer.

"We review the trial court's equitable distribution decisions for abuse of discretion and examine its valuation of marital assets to determine whether it is supported by competent, substantial evidence."  Dravis v. Dravis, 170 So. 3d 849, 853 (Fla. 2d DCA 2015).  A trial court abuses its discretion where it "include[s] assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings," unless there was misconduct that dissipated a marital asset. Id. (quoting Roth v. Roth, 973 So. 2d 580, 584 (Fla. 2d DCA 2008)); see, e.g., Plichta v. Plichta, 899 So. 2d 1283, 1286 (Fla. 2d DCA 2005) (holding that the trial court erroneously included depleted marital assets in the equitable distribution where the husband used the assets "to pay for his support, living expenses, and some litigation costs" during the dissolution proceedings and "no misconduct was asserted").

The trial court's equitable distribution of the trust account funds is problematic.  The trial court did not provide a specific and accurate breakdown of the funds listed in row #19 of the Worksheet.  The trial court listed the trust account funds to be $18,996, but the record indicates no more than $14,994.39 was ever in the account; the $8000 described in the March 2015 order, plus $6994.39 that the parties stipulated remained thereafter.

- 4 -

Perhaps, as Former Wife suggests, the $18,996 includes the sale proceeds from the real estate parcel deposited in Former Wife's bank account, $4001.93–minus 32 cents.  However, both parties testified that the $4001.93 was used to pay legal fees.  Thus, it was error if the trial court equitably distributed the $4001.93.  See Plichta, 899 So. 2d at 1286 ("It was error for the trial court to include these depleted marital assets in the equitable distribution scheme because the Husband used this sum during the pendency of the dissolution proceedings, and no misconduct was asserted.").  The trial court must reconsider the equitable distribution scheme on remand.  See id.

Further, the parties agreed that the $6994.39 remaining in the trust account included the $1500 in proceeds from the eviction case.  Apparently, this is the Landlord/Tenant case referred to in row #20 of the Worksheet.  If so, the trial court incorrectly included the $1500 in the equitable distribution twice, in row #19 and, again, in row #20.  The trial court shall also reconsider this issue on remand.

Next, the record is ambiguous as to whether and how much of the $14,994.39 in trust account funds were actually distributed or dissipated during the dissolution proceedings.  Prior to the trial, the trial court's March 2015 order and the parties' stipulation distributed a total of $9498.16 of the trust funds to Former Husband's lawyer, $4496.23 to Former Wife's lawyer, and $1000 to Former Wife.  But at trial, Former Wife did not know what happened to the trust account funds.  Former Husband testified that he used some of the funds for legal fees, but did not specify how much.  Neither party provided definitive testimony that the $1500 in the trust account, purportedly from the eviction case, was disbursed.  Former Husband thought the $1500 remained in the court registry.

We are unable to determine whether the trial court abused its discretion when it included the trust account funds in the equitable distribution scheme. We must reverse and remand for the trial court to reconsider this issue. See id. at 1286-87 ("Our inability to undertake meaningful review on this [equitable distribution] issue requires reversal and remand for reconsideration."). On remand, the parties shall present evidence and the trial court shall make findings regarding whether and how the trust funds were distributed or dissipated. See Chehab v. Hamilton-Chehab, 45 So. 3d 533, 536-37 (Fla. 5th DCA 2010) (remanding for the trial court to make findings where the record was unclear whether and how much the former husband received from a brokerage account). If the funds were dissipated during the dissolution proceedings, then the trial court shall not include the funds in the equitable distribution scheme, without findings of misconduct. See Dravis, 170 So. 3d at 853.

## II.     Former Wife's FRS Pension

Former Husband argues that the trial court incorrectly classified Former Wife's FRS pension as nonmarital. Former Wife counters that she was not vested and had no retirement plan until after she filed her petition because "she was first placed on administrative leave . . . , then her contract was terminated" in the fall of 2013, before she filed her petition for dissolution.

Under section 61.075(7), Florida Statutes (2017), generally, the date for determining whether assets are marital is "the date of the filing of a petition for dissolution of marriage." Presumptively, assets acquired by a spouse after "the date of the marriage and not specifically established as nonmarital assets" are marital assets. § 61.075(8). "Marital assets" include "[a]ll vested and nonvested benefits, rights, and

funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs." § 61.075(6)(a)(1)(e).

Former Wife filed her dissolution petition in 2013. The trial court concluded that Former Wife's FRS pension was a nonmarital asset because her employment start date was after she filed her petition. See § 61.075(7). However, Former Wife started contributing to her retirement plan as early as 2011. She offered no evidence indicating that she established her FRS pension as a nonmarital asset. Some portion of Former Wife's FRS pension, therefore, was a marital asset. See § 61.075(7).

The trial court received evidence that Former Wife was placed on administrative leave and then terminated from her employment as a teacher during the marriage. But the record does not indicate if and how Former Wife's administrative leave or termination affected her pension. Accordingly, we reverse and remand for the trial court to make findings regarding what portion of Former Wife's FRS pension should be classified as a marital asset. See Coleman v. Bland, 73 So. 3d 795, 796 (Fla. 5th DCA 2011) (reversing and remanding for "the trial court to hear and to make proper findings on the disposition of the Former Husband's pension" where "[t]he record seem[ed] to show that some portion of the pension, although small, was earned during the marriage and should [have been] classified as a marital asset").

III.    Numerical Error

Finally, we note that the trial court incorrectly listed in row #9 of the Worksheet $125,020 as the total equity of business inventory held by Former Husband. Instead, it should have been $128,020 ($125,020 for Former Husband plus $3000 for Former Wife). This error is harmless because the separate totals for Former Husband

and Former Wife were calculated correctly and the overall total had no effect on the calculation of the equalizer payment or the equitable distribution. See Herbello v. Perez, 754 So. 2d 840, 840 (Fla. 3d DCA 2000) ("After carefully reviewing the record, we find that the alleged erroneous evidentiary ruling did not affect the outcome of the trial. Therefore, the error, if any, was harmless." (first citing § 59.041, Fla. Stat. (1999); and then citing Katos v. Cushing, 601 So. 2d 612, 613 (Fla. 3d DCA 1992))). But, because we are remanding due to other issues with the equitable distribution, we direct the trial court to change the total equity in the Worksheet to avoid any potential issues in the future.

## IV.    Conclusion

We reverse and remand the trial court's equitable distribution. On remand, the trial court shall reconsider its equitable distribution of (1) the $4001.93 in proceeds from the sale of the real estate parcel deposited in Former Wife's bank account, and (2) the $1500 from the eviction case in row #20 of the Worksheet. The trial court shall take evidence and make findings regarding the distribution and dissipation of the trust account funds. Additionally, the trial court shall take evidence and make findings regarding the portion of Former Wife's FRS pension that should be classified as a marital asset. Finally, the trial court shall change the total equity in row #9 of the Worksheet from $125,020 to $128,020. In all other aspects, we affirm.

Affirmed, in part; reversed, in part; remanded with directions.

NORTHCUTT and KHOUZAM, JJ., Concur.